UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YAROSLAV ILNYTSKYY,

                  Plaintiff,              Case No. 19-cv-12268

v.                                  Paul D. Borman
                                  United States District Judge

EQUIPNET, INC. and
CSLIQ CORPORATION,

                  Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF DEFENSE EXPERT DAVID CLARK (ECF NO. 42)

This case involves a negligence action arising out of an accident at Defendants' warehouse facility in Brockton, Massachusetts, when a 4,000-pound piece of machinery fell off of a Hi-lo forklift being driven backwards up a ramp by Defendants' employee, Mateus Pambo. Mr. Pambo was removing the machinery that he had erroneously placed on Plaintiff's flatbed trailer. The unsecured load fell off the speeding Hi-lo onto Plaintiff Yaroslav Ilnytskyy, the owner-driver of the truck and trailer, who was assisting Mr. Pambo in the removal, seriously injuring Plaintiff.

Now before the Court is Plaintiff's Motion in Limine to Exclude the Testimony of Proposed Defense Expert David Clark, an industrial safety and human

factors expert, who prepared an expert witness report. (ECF No. 42.) Defendants filed a Response in opposition to Plaintiff's motion. (ECF No. 47.) Plaintiff did not file a reply brief.

Because the Court does not believe that oral argument will aid in its disposition of this motion, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion to exclude Dr. Clark's testimony.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

According to Plaintiff Yaroslav Ilnytskyy's Amended Complaint, on March 19, 2018, Plaintiff, a self-employed truck driver and Oakland County, Michigan resident, traveled to Defendants Equipnet, Inc.'s and CSLIQ Corporation's property in Brockton, Massachusetts to pick up a load of heavy machinery to be transported on his flatbed trailer to a facility in New Jersey. (ECF No. 23, Amended Compl. ¶¶ 8-9.) The pieces of machinery, which weighed in excess of 10,000 pounds in total, were initially loaded onto Plaintiff's flatbed Step Deck trailer by Defendants' Hi-lo driver employee Mateus Pambo. During that loading process, as each piece was placed on the bed of the trailer, Plaintiff acted to secure the load seriatim. (*Id.* ¶ 10.)

2

Mr. Pambo's Hi-lo forklift traveled multiple times from the dock down to the trailer, loading the machinery (four to five different pieces weighing several thousand pounds each) onto Plaintiff's "Step Deck" low-boy flatbed trailer. Plaintiff secured each piece, seriatim, as it was loaded onto the trailer. (*Id.* ¶ 11.) Because the low flatbed trailer does not have side panels, it was necessary for Plaintiff to secure the machinery to the trailer.

After Mr. Pambo, with Plaintiff's assistance, had completed placing and securing the load onto Plaintiff's trailer, Mr. Pambo suddenly realized that he had made a mistake: he had loaded wrong pieces of equipment onto the trailer. To remedy the mistake, Mr. Pambo required Plaintiff to unstrap each of the initial loads to enable Mr. Pambo to remove them, one by one, on multiple trips of his Hi-lo. (*Id.* ¶ 12.)

On Mr. Pambo's first removal effort, he placed the machinery, unsecured, on the Hi-lo, and then began to drive the heavy piece of machinery backwards, face down, up the downward-sloping ramp to get to the dock.

As Plaintiff was preparing to remove the trailer straps from the second load, Mr. Pambo failed to get the Hi-lo up to the dock on his first attempt, so he decided to drive the Hi-lo further down the ramp, and "juiced" the Hi-lo to get a running start going up the ramp backwards. This misguided attempt failed. The Hi-lo not only

3

failed to get up the ramp to the dock, but the heavy, unsecured load fell off the Hi-lo onto Plaintiff.

Plaintiff heard Mr. Pambo shout "Look Out!", but before Plaintiff could react, he was struck by the first load 4,000 pound unsecured piece of machinery on Mr. Pambo's Hi-lo that had fallen off the downward-facing forks as Mr. Pambo was zooming up the ramp going backwards. Plaintiff, who was on the trailer to remove the straps from the next piece of misplaced machinery was knocked off his trailer by the machinery and pinned between the wall and the trailer, suffering serious injuries. (*Id.* ¶ 14.)

Plaintiff was taken by ambulance, first to a hospital in Brockton, and then transferred to another hospital in Boston. (*Id.* ¶¶ 18-19.)

Plaintiff was released from the Boston hospital six days later, on or about March 25, 2018, and then treated at home by a visiting nurse for approximately 3.5 months, in addition to receiving other medical care. (*Id.* ¶ 20.)

Plaintiff claims that, because of his severe injuries, he has been unable to resume his self-employment, has had to sell his truck and trailer, and close his business, Red Express LLC. (*Id.* ¶ 24.)

4

## B.     Procedural History

On August 1, 2019, Plaintiff filed his Complaint against Defendant Equipnet, Inc., alleging claims for negligence and vicarious liability arising out of the March 19, 2018 accident. (ECF No. 1, Complaint.)

Plaintiff filed an Amended Complaint, with leave of Court, on June 2, 2020, adding CSLIQ Corporation as a Defendant. (ECF No. 23, Am. Compl.) Plaintiff alleges that CSLIQ Corporation is a wholly-owned subsidiary of Defendant Equipnet Inc., and is the employer of Mr. Pambo. (*Id.*) Plaintiff alleges negligence and vicarious liability claims against both Defendants arising out of the March 19, 2018 accident. (*Id.*)

On May 31, 2022, Plaintiff filed the instant motion in limine to exclude the testimony of proposed defense expert Dr. David Clark. (ECF No. 42, Pl.'s Mot.) Dr. Clark has a Ph.D. in both industrial engineering and human factors and safety. Defendants offer his testimony to address the actions of Plaintiff and Mr. Pambo at the March 19, 2018 incident, and offer his opinion about his view of the facts, and the reasonableness and safety of the parties' actions in this industrial setting.

Plaintiff seeks to preclude Dr. Clark's testimony, *inter alia*, because he has never operated either a truck and trailer like Plaintiff's, or a Hi-lo forklift similar to the one driven by Mr. Pambo, and significantly never went to the location of the

accident. Plaintiff also argues that Dr. Clark's testimony is cumulative of the parties' testimony, unhelpful to the jury, and thus irrelevant, and therefore should be excluded under Federal Rules of Evidence 401, 403, and 702.

On June 15, 2022, Defendants filed a Response in opposition to Plaintiff's motion. (ECF No. 47, Defs.' Resp.) Defendants state the "<u>Dr. Clark is not being offered as an expert in forklift operation</u>, but as a safety expert with regard to the operation of a dock and specifically aspects of loading and unloading trucks." (*Id.* PageID.486 (emphasis added).) Defendants add that Dr. Clark's testimony relates to the circumstances surrounding the incident and the safe operation of a loading dock in an industrial setting. (*Id.* PageID.493.)

Defendants assert in their Response brief that Dr. Clark will opine that:

1. Mr. Ilnytskyy should have been aware, prior to arriving, that loading/unloading his step truck trailer at a standard dock would require forklift travel up/down a slope.

2. Mr. Ilynytskyy's experience should have informed him of the proper procedures to avoid the hazards of working around a forklift.

3. Mr. Ilnytskyy placed himself too close to the moving, fully loaded forklift.

4. Mr. Ilnytskyy should not have been on the trailer when the forklift was being operated.

5. Mr. Pambo's action to increase the forklift's speed travelling backwards up the elevated dock plate in an effort to unload the trailer was reasonable.

6. The angle of the dock plate upslope likely cancelled any effect of the mast angle on the forklift.

(*Id.* PageID.498.) Defendants argue that Dr. Clark is qualified to offer such expert testimony relating to the safe operation of a loading dock in an industrial building, and that this testimony is relevant in this matter and based on Dr. Clark's specialized education, training, and experience, and thus admissible under Federal Rule of Evidence 702.

Plaintiff did not file a reply brief.

## II. LEGAL STANDARD

Where a party challenges the testimony of an expert witness, Federal Rule of Evidence 702 triggers a court's "gate-keeping role" to determine the admissibility of that testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;

b) the testimony is based on sufficient facts or data;

c) the testimony is the product of reliable principles and methods; and

       d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Simply stated, "[f]or expert testimony to be admissible, the court must find the expert to be: (1) qualified; (2) [his] testimony to be relevant; and [(3) his] testimony to be reliable." *Osborn v. Griffin*, 865 F.3d 417, 452 (6th Cir. 2017) (quoting *United States v. LaVictor*, 848 F.3d 428, 441 (6th Cir. 2017)). In *Daubert*, the United States Supreme Court identified several factors that courts may consider in assessing whether an opinion is reliable, including whether the expert's methods are testable, subject to peer review, or "generally accepted." 509 U.S. at 592–95. Yet the *Daubert* factors "do not constitute 'a definitive checklist or test'" and do not apply in every case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quoting *Daubert*, 509 U.S. at 593). "Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 142 (emphasis in original).

The party offering the expert has the burden of proving admissibility of the expert's opinion by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10. "[R]ejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (internal quotation marks

8

omitted) (quoting Fed. R. Evid. 702 Advisory Committee's Note, 2000 Amend.). In general, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted). However, the court is not "required to admit expert testimony 'that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Nelson v. Tenn. Gas Pipeline Co*., 243 F.3d 244, 254 (6th Cir. 2001) (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

The Administrative Office of the U.S. Courts Advisory Committee on Evidence Rules has recently approved and advanced for consideration by the full Federal Judicial Conference, an amendment to the Federal Rule of Evidence 702 stating that judges are required to determine whether it is "more likely than not" that an expert opinion reliably applies principles and methodologies to the facts in its case. Minnesota District Judge Patrick Schiltz, Chair of the Advisory Committee, noted that a common mistake that judges make under the current federal rules is the judge asking whether a jury could find that the expert's opinion is reliable, rather than the judge simply making that determination. This Court is following the Advisory Committee's advice in this case.

9

This Court also notes that Sixth Circuit Judge Raymond Kethledge authored an opinion, in *Lawrence v. Raymond Corp.*, 501 F. App'x 512, 518 (6th Cir. 2012), in which he discussed Federal Rule of Evidence 702, and noted that "A district court can also analyze more rigorously the admissibility of an expert's testimony if the expert's opinion was prepared solely for litigation." This Court is applying Judge Kethledge's advice in examining Dr. Clark's Report in the instant case, and finds that it was prepared solely for litigation.

Under normal circumstances, a district court may resolve a *Daubert* motion without holding an evidentiary hearing. *Nelson v. Tenn. Gas Pipeline co.*, 243 F.3d 244, 248-29 (6th Cir. 2001). A hearing is required only if the record is inadequate to decide the motion. *See Jahn v. Equine Servs., PSC*, 233 F.3d 382, 393 (6th Cir. 2000). In the instant case, the Court concludes that an evidentiary hearing is not required.

### III.  ANALYSIS

#### A.    Dr. Clark's Qualifications

Plaintiff does not specifically challenge Dr. Clark's credentials or his qualifications as an expert on human factors and safety. He instead contends that Dr. Clark is not qualified to address the operation of a forklift because he is not a licensed

forklift operator, has no training involving the operation of a forklift or its loading of a low boy "Step Deck" trailer on a ramp. (ECF No. 42, Pl.'s Mot., PageID.412.)

Defendants respond that Dr. Clark is not being offered as an expert in forklift operation, but as a safety expert with regard to the March 2018 accident involving Mr. Pambo and Plaintiff, and the safe operation of a loading dock in an industrial building (Defendants' warehouse). (ECF No. 47, Defs.' Resp., PageID.493.)

Defendants note that Dr. Clark has a Ph.D. from the University of Michigan in Industrial and Operations Engineering, specializing in human factors and safety. He has been a registered engineer in four states, and a member of the American Society of Safety Engineers since 1984. Dr. Clark has worked in the field of industrial engineering for over 40 years, and he was also a professor of industrial engineering at Kettering University for over a decade. (*Id.*, citing Ex. A, David Clark, Ph.D., P.E., Curricula Vitae, PageID.422-34, and Ex. B, Deposition of Dr. Clark.)

The Federal Rules of Evidence provide that an expert may be qualified via their "knowledge, skill, experience, training or education," or a combination of these factors. Fed. R. Evid. 702. "[A] proposed expert witness should not be required to satisfy an overly narrow test of his own qualifications." *United States v. Barker*, 553 F.2d 1013, 1024 (6th Cir. 1977) (internal quotation marks and citation omitted).

11

The Defendants state that they retained Dr. Clark to review the circumstances surrounding the March 19, 2018 accident, and to opine relative to the actions of the parties involved in this industrial setting. (ECF No. 42-4, Clark Report, PageID.459.) To reiterate, Defendants state that Dr. Clark was not retained to offer expert testimony about the operation of a forklift, the principal/central focus of the accident in this case. Yet, the Court notes that Dr. Clark ventured into this territory in bullet points # 5 and 6 on pages 6-7, *supra*.

The Court finds that, taken together, while Dr. Clark's education, academic training, professional experience, and knowledge, have left him sufficiently versed in the areas of human factors and industrial safety to create a sufficient foundation for his opinion/testimony in an industrial setting, his background does not establish expertise as to Mr. Pambo's operation of the heavily loaded, backward zooming Hi-lo forklift – the central focus of this case. The focus is on what happened after Mr. Pambo's aborted initial unsuccessful attempt to travel backwards up the ramp – to wit, his decision to get a running start and then "gunning" the Hi-lo, going backwards up the ramp that caused the unsecured heavy machinery to fall onto Plaintiff, crushing him.

Dr. Clark's opinion goes beyond Defendants' request that he apply his expertise to the industrial setting, and proceeds further to shift the blame to Plaintiff

12

for his necessary attending to the loading-unloading-reloading of his flatbed low-boy deck trailer that contains no supporting side walls. The Court finds that Dr. Clark's conclusion that totally blames the victim of Mr. Pambo's reckless operation of the Hi-lo is not reliable.

### B.     Dr. Clark's Opinions

Plaintiff argues that Dr. Clark's expert opinion should be excluded because it neither assists nor adds value to the trier of fact. Plaintiff contends that Dr. Clark "largely recites the self-serving testimony from Defendants' employees" and "never opines as to the cause of the 4000-lb mixer's fall onto Plaintiff." (ECF No. 42, Pl. Mot., PageID.416.) The Court concludes that this contention is correct.

Plaintiff further contends that, "[a]t best, [Dr.] Clark's expert opinion is cumulative of the evidence and does not provide any expert analysis necessary and sufficient to overcome the *Daubert* burden." (*Id.*, PageID.417.) Plaintiff argues that "[t]here is nothing in [Dr.] Clark's opinion that is outside the realm of the jury's knowledge[.]" (*Id.*)

Defendants respond that Dr. Clark's opinion, evaluating Mr. Pambo's and Plaintiff's actions prior to and at the time of the incident, and addressing the industrial setting in which the forklift was operating relative to the trailer, the loading dock, the dock plate, and the location of Plaintiff during the loading/unloading

13

process, is of consequence to deciding Plaintiff's claims in this matter. Defendants argue that Dr. Clark's testimony regarding the safe operation of a loading dock in an industrial setting, which is based on his specialized education, training, and experience, will assist the trier of fact in determining whether or not Mr. Pambo's or Plaintiff's actions were proper and to what degree. (ECF No. 47, Defs.' Resp., PageID.496-97.)

In *Daubert*, the United States Supreme Court held that Rule 702 imposes a "gatekeeping" obligation on the trial court to ensure that expert testimony "is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The relevance is designed to ensure that "there is a 'fit' between the testimony and the issue to be resolved by the trial." *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999) (citation omitted). The reliability step focuses on the "methodology and principles" that form the basis for the testimony. *Id.* at 496-97.

As noted by the Sixth Circuit:

The test of reliability is "flexible," and the *Daubert* factors do not constitute a "definitive checklist or test," but may be tailored to the facts of a particular case. Indeed, we have recognized that the *Daubert* factors "are not dispositive in every case" and should be applied only "where they are reasonable measures of the reliability of expert testimony."

14

*In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529 (citations omitted). The reliability of an expert's testimony: "means that it must be 'supported by appropriate validation—i.e., "good grounds," based on what is known.'" *Id.* (citing *Daubert*, 509 U.S. at 590). Stated differently, reliability does not depend on the accuracy of the opinion but "whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Id.* at 529-30.

> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the [scientific] validity—and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not the conclusions they generate.

*Daubert*, 509 U.S. at 594-95. Moreover, whether the "specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire Co.*, 526 U.S. at 153.

The Court finds that the part of Dr. Clark's proffered opinion testimony with regard to the industrial setting of the dock in this case is sufficiently relevant and likely reliable to be admissible under Rule 702 and *Daubert*, but not as to his proposed testimony regarding Mr. Pambo's operation of the Hi-lo and its impact on the victim, Mr. Ilnytskyy.

Dr. Clark states that he "was asked to look at the facts surrounding [the March 19, 2018] forklift accident and to opine relative to the actions of the parties

15

involved." (ECF No. 42-3, Deposition of David Clark, Ph.D., P.E., at p. 14, PageID.440.)

Dr. Clark never went to the Defendants' industrial location to examine and measure, *inter alia*, the slant or grade of the dock, nor did he examine this Hi-lo – or a similar model of this Hi-lo, nor put a similar machinery weight on a Hi-lo and calculate the gravity force going up a similar grade backwards, and slanted with such a load.

As set forth in Dr. Clark's expert report, his interpretations of the facts from Defendants' perspective include many conclusions that go beyond the industrial setting, in particular, his complete absolution of Mr. Pambo's conduct that resulted in the unsecured machinery crushing the Plaintiff:

- An experienced tractor-trailer driver such as Mr. Ilnytskyy would have been aware, prior to arriving, that he was likely to encounter a standard loading dock height; he could have requested information as to dock height and accommodations if he had concerns.

- Mr. Ilnytskyy should have been aware, prior to arriving, that loading/unloading his step deck trailer at a standard dock would require forklift travel up/down a slope.

- Mr. Ilnytskyy's experience should have informed him of the proper procedures to avoid the hazards of working around a forklift.

- Mr. Ilnytskyy placed himself too close to the moving, fully-loaded forklift, leaving an insufficient margin of safety should the load become unstable and fall.

16

- Mr. Ilnytskyy should not have been on the trailer when the forklift was being operated.

- Mr. Pambo took the not unreasonable action to re-approach the upslope at a higher travel speed.

- The dynamics of [the] forklift encountering the dock plate at the higher speed caused the load to shift and eventually fall.

- Typically, forklift masts are angled back toward the operator during loaded travel to help stabilize the load against the mast and to prevent the load from slipping towards the end of the forks. In this case, the angle of the dock plate upslope likely cancelled any effect of the mast angle.

(ECF No. 42-4, Clark Report, PageID.467-68.)

Defendants allege in their Response brief that jurors are unlikely to know the safety considerations that pertain to the loading and unloading of a truck such as the one Plaintiff was driving, in an industrial setting such as Defendants' warehouse, and that Dr. Clark's specialized knowledge will assist the jurors in deciding the liability issues in this case. Dr. Clark's having been previously "in the vicinity" of moving forklifts will not assist the jury in understanding the relevant central issues in this case.

## IV. CONCLUSION

The Court finds that Dr. Clark's opinions as to the safety of the industrial setting location are admissible. Further, the Court notes that "[v]igorous cross-

17

examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted). It is the responsibility of the jury to evaluate the proposed expert's relevant conclusions. *Dilts v. United Grp. Servs., LLC*, 500 F. App'x 440, 446 (6th Cir. 2012). The Court will not exclude Dr. Clark as an expert witness in this case, <u>but</u> will limit his testimony to his area of expertise –safety in this industrial setting.

On the other hand, the Court finds inadmissible Dr. Clark's proposed conclusions relating to the operation of Mr. Pambo's Hi-lo. Defendants have stated that Dr. Clark is not being offered as an expert in Hi-lo forklift operation by Mr. Pambo, the key issue in this case. The Court further concludes that Dr. Clark's conclusion of no fault by Mr. Pambo based on Mr. Pambo's actions is not reliable, is undermined by the facts of this accident, and is not within his retention by Defendants. Dr. Clark does not discuss the specific actions of Mr. Pambo's racing backwards in his Hi-lo carrying an <u>unsecured</u> load of heavy machinery on his Hi-lo, up a downward facing ramp on a second try after placing the wrong load on Plaintiff's low-boy trailer.

Despite Defendants' Response stating that Dr. Clark is not being offered as an expert in Mr. Pambo's operation of a Hi-lo forklift, he does just that. Dr. Clark

18

ignores Mr. Pambo's reckless operation of the Hi-lo forklift that resulted in the accident – the focus of this lawsuit – and places the blame on Plaintiff, who was necessarily standing on his trailer to assist Mr. Pambo by disconnecting the secured machinery Mr. Pambo had erroneously placed on Plaintiff's low-boy trailer.

The Court GRANTS IN PART and DENIES IN PART Plaintiff's motion in limine to exclude the testimony of proposed defense expert Dr. David Clark. The Court will permit Dr. Clark to testify as an expert regarding safety in this industrial setting.

The Court rejects Defendants' request to permit Dr. Clark to testify as an expert as to Mr. Pambo's operation of the Hi-lo.

The Court further concludes that a jury could not find reliable Dr. Clark's testimony on Mr. Pambo's operation of the Hi-lo forklift. The Court further concludes, after analyzing the admissibility of Dr. Clark's Hi-lo testimony, which was prepared solely for this litigation, that it is not reliable.


IT IS SO ORDERED.

Dated: September 12, 2022              s/Paul D. Borman
                                      Paul D. Borman
                                      United States District Judge