UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YAROSLAV ILNYTSKYY

Plaintiff,

v.

EQUIPNET, INC., et al

Defendant.

_____/

Case No. 19-12268

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## OPINION AND ORDER REGARDING MOTIONS IN *LIMINE* [ECF NOS. 59-67] AND [ECF NO. 70]

### I.     Introduction

Yaroslav Ilnytskyy ("Plaintiff") brings this lawsuit against Equipnet, Inc. and CSLIQ Corporation ("Defendants"). Plaintiff's Amended Complaint alleges negligence and vicarious liability claims against Defendants. He seeks compensation for injuries he allegedly sustained while working on Defendants' property on March 19, 2018. [ECF No. 73, PageID.1081].

Before the Court are ten Motions in *Limine* ("MILs"). The MILs docketed at ECF Nos. 59-67 were filed by Plaintiff between February 3, 2023, and February 6, 2023. Defendants responded to all of these motions on February 17, 2023, except for ECF Nos. 66 and 67. Those two motions are uncontested. Plaintiff did not file a

1

reply. The MIL docketed at ECF No. 70 was filed by Defendants on February 7, 2023. Plaintiff responded on February 20, 2023. Defendant did not file a reply. The Court did not hold oral argument on the motions; it met with the parties on July 24, 2023. During that time, the Court stated on the record that oral argument was not necessary, and that it would decide the motions on the briefs. See E.D. Mich. L.R. 7.1(f)(2). The MILs are fully briefed. For the reasons stated below, the Court orders the following:

(1) [**ECF No. 59**] Plaintiff's MIL to Exclude Reference to Alcohol is **GRANTED**. However, Defendant may discuss social activities other than alcohol consumption.

(2) [**ECF No. 60**] Plaintiff's MIL to Preclude Testimony or Argument Regarding Plaintiff's 2015 Work Accident Involving a Broken Strap is **GRANTED**.

(3) [**ECF No. 61**] Plaintiff's MIL to Bar Any Reference, Argument, or Evidence of the Michigan No-fault Act, Including by Defendant's Experts is **GRANTED IN PART AND DENIED IN PART.** It is **GRANTED** as to any reference to and/or argument regarding the no fault act at trial and in front of the jury; and **DENIED** as to evidence pertaining to the No Fault Act, which will be necessary to prove or defend against Plaintiff's claims.

(4) [**ECF No. 62**] Plaintiff's MIL to Bar Defendant from Introducing their Expert Reports Into Evidence at Trial and Limit Defendants Expert Testimony to the Facts, Data, Theories, and Opinions Propounded in their Expert Reports is **GRANTED IN PART AND DENIED IN PART:**
    i. The Expert Reports themselves are not admissible.
    ii. Defendant may revise expert reports and submit them to Plaintiff no later than **August 29, 2023.** Plaintiff's responses to the revisions are due **THIRTY (30) days before trial**.
    iii. Admissible opinion evidence must be limited to information covered in the reports as supplemented.

2

(5) [**ECF No. 63**] Plaintiff's MIL to Bar Any and All Evidence, Testimony, and or Argument Regarding No fault (PIP) or other Collateral Sources Plaintiff received is **GRANTED**.

(6) [**ECF No. 64**] Plaintiff's MIL Confirming that Certain Testimony of Defense Expert David Clark is Barred from Trial is **GRANTED**. Dr. Clark is still permitted, however, to testify regarding the industrial setting and safety in the industrial setting—*i.e.*, a loading dock in an industrial building such as Defendants' warehouse—as long as such testimony does not focus on Plaintiff's actions during the incident.

(7) [**ECF No. 65**] Plaintiff's MIL to Bar Any Reference, Argument, or Evidence of Plaintiff's Driving Record, Including Red Express daily driving logs from March 17, 2018, and March 18, 2018 is **GRANTED IN PART AND DENIED IN PART.** It is **GRANTED** as to the March 17, 2018 driving log and **DENIED IN PART** as to the March 18, 2018 driving log.

(8) [**ECF No. 66**] Plaintiff's MIL for this Court to Acknowledge Mortality Tables as Self-authenticating or Alternatively to Take Judicial Notice of the Same is **GRANTED** as it is uncontested.

(9) [**ECF No. 67**] Plaintiff's MIL to preclude testimony or argument suggesting Mateus Pambo was not acting in the scope of his employment is **GRANTED** as it is uncontested.

(10)      [**ECF No. 70**] Defendant CSLIQ Corp MIL to exclude evidence of Medical Bills in Excess of Amounts Paid is **DENIED.**

## II.    Factual Background

Plaintiff is domiciled in Oakland County, Michigan. [ECF No.23, PageID.131]. This case arises from an incident that occurred in Brockton, Massachusetts on Defendant's property on March 19, 2018. [Id]. Plaintiff alleges that he was in Brockton to pick up machinery from the Defendants to transport it to New Jersey. (ECF No.23, PageID.132).

Plaintiff alleges that he was working with Defendants' employee, Mateus Pambo, to load machinery onto his truck using a hi-lo machine. [ECF No. 73, PageID. 1081]. After completing an initial load, Mr. Pambo determined that they had loaded the wrong machinery. [Id]. Mr. Pambo then began unloading to make room for the correct load while Plaintiff was still on the truck. [Id]. It was during this process that the equipment fell from the forklift and onto Plaintiff, resulting in injuries that warranted a hospital stay in Massachusetts before Plaintiff could return to Michigan. [ECF No. 73, PageID. 1082].

Plaintiff's purported injuries include but are not limited to bone fractures in his right foot, injuries to his right knee, fractures to his left arm requiring surgery, nerve damage and scarring on his left arm, injuries to his left elbow and shoulder, injuries to his left hand, and closed head injuries resulting in headaches, dizziness, lightheadedness, anxiety, and mood swings. (ECF No.23, PageID.135). He states

these injuries are serious and require on-going treatment through medication and doctor's visits. [Id].

At the time of the incident, Plaintiff's truck was insured through a Michigan insurance policy covered by Great West Casualty. Following the accident, Plaintiff received No-Fault PIP benefits from Great West Casualty, limited to those damages allowable pursuant to MCL 500.3107. Great West Casualty paid Plaintiff's medical costs (albeit at a discounted rate) and also 85% of his wage loss for a period within the No-Fault Act's three-year statutory limitation.  [ECF No. 63, PageID.718].

### III.   Applicable Law and Analysis Pertaining to All Motions in *Limine*

Each motion has law and analysis unique to that respective motion for purposes of this Opinion and Order. For efficiency purposes, however, the Court will only discuss in this section (Section III) the law applicable to all motions in *limine*, and it will discuss the law and analysis particular to each respective motion in the section that corresponds to that motion, if necessary. Each motion is discussed in sequential order. However, because ECF Nos. 63 and 70 are related, the Court will discuss ECF No. 70 immediately after ECF No. 63.

The purpose of motions in *limine* is to obtain advance rulings on the admissibility of evidence so that trial preparation is facilitated, distractions during trial are reduced, legal issues can be deliberated more "serenely," and the risk of

exposure of the jury to inadmissible evidence can be minimized. *United States v. Hamilton*, 574 F. Supp. 3d 461, 466 (E.D. Mich. 2021). District courts retain a high level of discretion in granting, denying, or later modifying motions in *limine*. See *Branham v. Thomas Cooley Law Sch*., 689 F.3d 558, 560 (6th Cir. 2012) (reviewing a district court's order on a motion in *limine* for abuse of discretion). A grant or denial of a motion in *limine* does not foreclose the possibility that it may be changed later. *Id*. at 562. ("Even if nothing unexpected happens at trial, the district judge is free… to alter a previous in *limine* ruling."). This discretion runs concurrent with the high standard that must be met to exclude evidence. The exclusion of evidence in *limine* should only occur when "evidence is clearly inadmissible for any purpose." *Id*. at 846.

The Court is charged with determining all preliminary questions of admissibility under the Federal Rules of Evidence ("FRE"). See Fed. R. Evid. 104(a). FRE 402 states that all relevant evidence is admissible unless any of the following provides otherwise: the Constitution, a federal statue, another rule of evidence or rule prescribed by the Supreme Court. *See* Fed. R. Evid. 402. Irrelevant evidence is inadmissible. *Id*. The test for relevant evidence is stated under FRE 401, which provides that evidence is relevant if it "has the tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence

6

in determining that action." Fed. R. Evid. 401. The standard for relevancy is "extremely liberal." *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009). "[E]ven if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has the slightest probative worth." *United States v. Whittington*, 455 F.3d 736, 738–39 (6th Cir. 2006) (alteration in original) (quoting *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 475 (6th Cir. 1996)).

However, relevant evidence may also be inadmissible if its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### A. [ECF No. 59] Plaintiff's MIL to Exclude Reference to Alcohol

Plaintiff seeks to preclude any evidence regarding his consumption of alcohol before and after the incident. Plaintiff argues this evidence is irrelevant and unfairly prejudicial. [ECF No.59, PageID.653]. Defendants argue that this evidence is admissible because it would aide in the calculation of damages by helping to inform the jury's understanding of Plaintiff's lifestyle before and after his purported injuries. Defendants proffer testimony taken from several people associated with Plaintiff in his personal life. Their testimonies pertain to Plaintiff's alcohol

consumption and an image of Plaintiff holding a beer bottle. Plaintiff insists that, ". . . social alcohol consumption has [no] bearing on whether Defendants' negligence … caused him emotional trauma". (ECF No.59, PageID.653).

Plaintiff's argument continues, averring that it is unclear what Defendants' intention is in eliciting these statements from his family and friends. [ECF No.59, PageID. 652]. He believes this evidence is inadmissible under FRE 406 as habit evidence, under FRE 608 as general credibility evidence, or as character evidence under FRE 404b. [Id]. Beyond that, Plaintiff argues that evidence of his alcohol consumption is inadmissible under FRE 403 because it has no probative value but is likely to mislead and unfairly prejudice the jury into believing that his alcohol consumption played a role in the accident and his subsequent claim for damages. [ECF No. 59, PageID.654].

Plaintiff attaches to his motion four transcripts from depositions taken of witnesses to show the irrelevance of his alcohol consumption. In these exhibits, Plaintiff points to deposition excerpts in which defense counsel asked witnesses about Plaintiff's drinking habits. In the first transcript, defense counsel asked family friend Suren Troyanik if he knew whether plaintiff drinks alcohol. Suren Toryanik answered that the Plaintiff drank "[o]ccasionally, socially". (ECF No.59-1, PageID.657). Defense counsel continues with this line of questioning, asking if

8

Suren Toryanik and his family ever partied with Plaintiff. Mr. Toryanik responds affirmatively again but specified this was before the accident. [ECF No.59-1, PageID.658]. In exhibit two, Defense counsel questions Iryna Toryanik, another family friend, about Plaintiff's alcohol consumption. She responds that the last time she saw him drink was at a baptism in February. [ECF No.59-2, PageID.660].

The third exhibit contains the deposition testimony given by Oleksandr Remez and is accompanied by a photograph. Mr. Remez is asked about the Plaintiff's drinking habits and is shown a photograph that depicts Plaintiff, their friends, and Mr. Remez himself. In the photo Plaintiff appears to hold a beer bottle. [ECF No.59, PageID.650]. When asked about the Plaintiff's drinking habits, Mr. Remez responds he does not know the frequency with which the Plaintiff drinks but that, in the past, him and the Plaintiff would share a beer when he came over to Mr. Remez's house. (ECF No. 59-1, PageID.663). However, Mr. Remez states that the two have not shared such a moment since the Plaintiff's accident. (Id.). Exhibit four is the deposition of Mr. Remez's wife, Nataliya. She testified that Plaintiff was "pretty much avoiding alcohol" because of the medication he was on. (ECF No.59-4, PageID.666).

The Court will discuss FRE 401 and 403 first. Plaintiff asserts that testimony pertaining to his alcohol consumption is irrelevant because it is not probative in

9

determining his legal entitlement to damages. In *Leroy v. Morinda USA, Inc.¸* No. 16-11427, 2017 WL 4456881 (E.D. Mich. Oct. 2017)*,* the plaintiff brought an action against the defendants for negligence and vicarious liability. *Id* at *1. The plaintiff moved in *limine* to exclude evidence regarding social security and disability benefits she obtained for medical issues she experienced before she was allegedly injured while attending the defendant's convention. *Id*. The court denied plaintiff's motion in *limine*, ruling that the evidence was admissible due to the existence of fact questions regarding whether plaintiff's injuries were caused by pre-existing medical conditions or by defendant's negligence. *Id.* at *3. The court in *Leroy* recognized that evidence of preexisting medical conditions is admissible if relevant in calculating personal injury damages. *Id.*, at *3. *Id.* at *2. The *Leroy* court believed that the plaintiff's preexisting medical conditions could shed some light on the causation factor of his damages claim.

To the extent that Plaintiff's alcohol consumption is analogous to a pre-existing medical condition, it is distinguishable from the medical condition at issue in *Leroy*. None of the previously discussed exhibits shed light on the causation of Plaintiff's injuries on the day of the incident. The rule most applicable to this case is illustrated by *Dziuba*.

10

In that case, the plaintiff brough a lawsuit alleging excessive force claims against a police officer that conducted a traffic stop on him. *Dziuba v. Smith,* No. 16-cv-108889, 2017 WL 3084375 at *1 (E.D. Mich, July 20, 2017). The plaintiff complained that the stopping officer used excessive force and caused injuries to the plaintiff's head. *Id*. The plaintiff filed a motion in *limine* to exclude a variety of evidence, including past treatment for alcohol abuse. *Id.* at *3. The court granted the motion, reasoning that "[p]laintiff's use of alcohol at any point other than on the day at issue in this case and any subsequent treatment he received for his use of alcohol are categorically irrelevant." *Id*. The Court reasoned that parties seeking to utilize evidence of impairments, like preexisting conditions and alcohol use, must show some proof of their relevancy to the alleged injuries of the instant action. *Id*. *Dziuba* is analogous because Defendants introduce evidence of Plaintiff's alcohol consumption that took place, not on the day of the incident, but at a different time.

Defendants say evidence of Plaintiff's alcohol consumption is probative of Plaintiff's calculation for damages, arguing by implication that his drinking habits may have contributed to his injuries and present damages, thereby reducing the amount Defendants could potentially be liable for in damages. [ECF No. 71. PageID.1060]. The argument continues; Defendants aver that Plaintiff cannot

11

"present his case in a vacuum" and that they must be allowed to argue against Plaintiff's claims of damages as well as liability. [Id].

Defendants are free to challenge the extent and severity of Plaintiff's damages; but asking targeted questions about the Plaintiff's alcohol consumption would be unfairly prejudicial. Such a line of questioning will not be permitted at trial for any witness. Plaintiff correctly argues that if this evidence was presented to a jury, it would be encouraged to believe that alcohol contributed to the cause of his injuries and attention would be deflected from the paramount issues of the case. [Id]. Despite being so prejudicial and confusing, the statements about Plaintiff's alcohol consumption neither prove the extent of his injuries nor the amount he could be entitled to in damages if he prevails at trial. Indeed, the probative value of the testimonies regarding alcohol consumption is substantially outweighed by the risk of the jury drawing impermissible inferences about his alcohol consumption, the cause of his injuries, and his sobriety at the time of the accident. Therefore, the testimony from Plaintiff's friends regarding his alcohol consumption is excluded, pursuant to FRE 401 and 403.

Beyond issues of relevancy and unfair prejudice, Plaintiff argues the testimony is inadmissible as character evidence under FRE 404(b), as habit evidence under FRE 406, and for impeachment purposes under FRE 608. [No. 59,

12

PageID.652]. Since the statements are not admissible under FRE 403 for the stated purpose of attacking the causation and damages prongs of Plaintiff's claims, the statements must be excluded, and no further analysis is needed. See *United States v. Czuprynski*, 65 F.3d 169 (6th Cir. 1995) (reversed on other grounds) (holding that even if evidence survives the scrutiny of other rules "it must be clear that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice under rule 403") and (citing *U.S. v. Dunn*, 805 F.2d 1275, 1280 (6th Cir. 1986).

For good measure though, the Court will explain the circumstances in which the testimonies would be inadmissible under FRE 404(a) and (b) to attack Plaintiff's claim for damages. FRE 404(a) provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." FRE 404(b) provides that "evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

13

Defendants state no reason—other than attacking Plaintiff's damages claim—for offering the testimonies to be admitted into evidence. Thus, if Defendants introduced evidence of Plaintiff's prior, unrelated alcohol use to prove that he drank alcohol on the night of the incident, that evidence would be inadmissible character evidence under Rule 404(a) and (b). See *Judd v. Bennett*, No. 2:16-CV-00062, 2021 WL 4340523, at *2 (M.D. Tenn. Mar. 24, 2021) (holding in an excessive force case that "if Bennett introduced evidence of Judd's prior, unrelated alcohol use to prove that he drank alcohol on the night of the incident, that evidence would be inadmissible character evidence under Rule 404(a)").

The Court does not rule that Plaintiff's alcohol use is inadmissible for all purposes. For example, if Plaintiff—for one reason or another—testifies that he never drank alcohol in his life, evidence of his past alcohol use could be used to impeach him and discredit his propensity for truth telling. And if this evidence is offered for impeachment purposes, the Court will give a limiting instruction to ensure that the jury considers Plaintiff's past alcohol use only for impeachment purposes, and not for the purpose of determining whether Defendants were negligent and caused Plaintiff's injuries. See *Harris v. City of Circleville*, No. 2:04-cv-1051, 2010 WL 816974, at *10 (S.D. Ohio Mar. 5, 2010).

For these reasons, ECF No. 59 is **GRANTED**.

14

### B. [ECF No. 60] Plaintiff's MIL to Preclude Testimony or Argument Regarding Plaintiff's 2015 Work Accident Involving a Broken Strap

Plaintiff moves in *limine* to prevent Defendants from presenting evidence regarding his 2015 work accident to show his knowledge and familiarity with the hazards associated with loading and unloading a trailer. [ECF No. 72, PageID.1066]. Plaintiff testified during his deposition that, in 2015, he was standing in the bed of his trailer, manually attaching a tarp over a load, when one of the straps broke, causing him to fall off the trailer. [ECF No. 60-1, PageID.678, PageID.680]. Plaintiff fell approximately four feet and fractured his right wrist. [*Id.* at PageID.683]. Plaintiff was using the same vehicle during the 2015 accident as he was during the March 2018 incident at issue in this case. [Id]. However, the vehicle that was involved in the 2018 incident had been modified so that Plaintiff no longer had to manually attach a tarp to secure loads. *Id.* at PageID.682–83.

Plaintiff argues that the 2015 accident was so dissimilar from the incident at bar that "it has no relevance and must excluded from trial." [ECF No. 60, PageID.672]. Defendants "acknowledge that the evidence regarding Plaintiff's prior accident does not involve a similar sequence of events," but they argue the prior accident is nevertheless "relevant to Plaintiff's notice of the hazards associated with the loading and unloading of a truck." [ECF No. 72, PageID.1071].

15

In *Bryan v Emerson Elec. Co.*, the Sixth Circuit noted that "[a]lthough generally evidence of other accidents and injuries will be relevant, trial judges must scrutinize such evidence closely before admitting it in light of possible prejudice or confusion of the issues." *Bryan*, 856 F.2d 192, *4 (6th Cir. 1988) (table opinion) (citing McCormick on Evidence, § 200 at 587 (3d ed. 1984)). This is because "[i]f a prior accident is not similar in some way to the case before the court, then its admission will not make it more, or less, probable that the plaintiff suffered an injury nor will it prove any other issue in *this* case." *Id.* (emphasis in original) (citing Fed. R. Evid. 401; *In re Beverly Hills Fire Litigation*, 695 F.2d 207, 217 (6th Cir.1982)) Nevertheless, as both Parties recognize, the *Bryan* Court "decline[d] to adopt any fixed definition of the degree of 'similarity' required before prior accidents or occurrences become relevant." *Id.* at *5; *see also* ECF No. 60, PageID.673; ECF No. 72, PageID.1072. The Court did, however, note in dicta that "[i]f the prior occurrence is offered to prove notice [in a products liability case], . . . a lesser degree of similarity is required provided the accident would have tended to warn the defendant." *Id.* (citing *Exum v. General Elec. Co.*, 819 F.2d 1158, 1162–63 (D.C. Cir. 1987)).

Here, the Court concludes that evidence of the 2015 accident is not relevant. Defendants intend to offer evidence of the accident to "establish[] Plaintiff's

16

knowledge of the risk he unnecessarily encountered by being on the trailer during the loading/unloading process." [ECF No. 72, PageID.1072].  However, the 2015 accident was caused by a mechanical failure while the March 2018 incident was allegedly caused by human error that resulted in equipment falling off a forklift, striking plaintiff, and knocking him off the trailer.  As such, the mechanisms of injury in the two incidents are too dissimilar for the 2015 accident to have any bearing on Plaintiff's knowledge with respect to the March 2018 incident.

Accordingly, Plaintiff's Motion *in Limine* to Preclude Testimony or Argument Regarding Plaintiff's 2015 Work Accident Involving a Broken Strap is **GRANTED**.

### C.  [ECF No. 61] Plaintiff's MIL to Bar Any Reference, Argument, or Evidence of the Michigan No-fault Act, Including by Defendant's Experts

Plaintiff moves in *limine* to bar "evidence of, inquiry into[,] and testimony and argument regarding the Michigan No-Fault Act."  [ECF No. 61, PageID.684]. Specifically, Plaintiff argues that MCL 500.3135(3)—which limits tort liability for auto accidents in Michigan to, *inter alia*, noneconomic damages and allowable expenses and work loss benefits in excess of those available via personal injury protection benefits—does not apply. So, Plaintiff avers, "[a]ny argument, evidence or reference to the Michigan No-Fault Act is therefore irrelevant." [ECF No. 61,

PageID.688]. Defendants concede that, in light of Magistrate Judge Stafford's September 23, 2022 Opinion and Order determining that MCL 500.3116—which permits an insurer to seek reimbursement of expenses it paid when the insured recovers economic damages in a tort action arising from an out-of-state accident— governs this action, MCL 500.3135 necessarily does not apply.  [ECF No. 74, PageID.1093].   As such, they do not intend to assert that Plaintiff's recovery is limited by MCL 500.3135.  *Id*. at PageID.1093–94.  However, Defendants contend that, given that Plaintiff's negligence claims are "governed by a section of the No Fault Act[,] . . . excluding reference to it is without justification."  *Id*.

In her September 23, 2022 Opinion and Order, Magistrate Judge Elizabeth Stafford held that Michigan law, and specifically MCL 500.3116 of Michigan's No-Fault Act, applies to this case.  See ECF No. 51.  Because a provision of Michigan's No-Fault Act governs Plaintiff's negligence claims, the Act, as a whole, is necessarily relevant to this action under Federal Rule of Evidence 401. Nevertheless, as discussed in greater detail *infra*, the Court is not limiting the evidence of economic damages that Plaintiff can present to the jury.  Thus, the probative value of reference to the No-Fault Act, is substantially outweighed by the danger of confusing the issues or misleading the jury.  See Fed. R. Evid. 403.  Indeed, as demonstrated by the Parties' briefing, reference to the No-Fault Act causes

18

confusion because people associate the name of the Act with specific provisions instead of the Act as a whole. The Court will therefore bar any reference to the No-Fault Act under FRE 403. Likewise, the Court will bar any reference to or evidence regarding MCL 500.3135 because it does not apply to this case and is therefore not relevant under Rule 401.[1]

Accordingly, Plaintiff's Motion in Limine to Bar Any Reference, Argument, or Evidence of the Michigan No-Fault Act, Including by Defendant's Experts is **GRANTED IN PART AND DENIED IN PART**. It is **GRANTED** with respect to any reference to the Michigan No-Fault Act or any evidence of, inquiry into, testimony or argument regarding MCL 500.3135 during trial and before the jury. The Motion is **DENIED** as to any evidence pertaining to remaining provisions of the Act, which will be necessary to prove or defend against Plaintiff's claims.

### D. [ECF No. 62] Plaintiff's MIL to Bar Defendant from Introducing their Expert Reports Into Evidence at Trial and Limit Defendants Expert Testimony to the Facts, Data, Theories, and Opinions Propounded in their Expert Reports

Plaintiff moves in *limine* to prevent Defendants from introducing their experts' reports at trial. Defendants have retained four experts for this case, and each

---

[1] As discussed in greater detail *infra*, the Court is permitting the Parties to submit revised expert reports given its holdings with respect to the motions *in limine*. Defendants revised damage calculations may not be based on MCL 500.3135.

has prepared a pretrial report. They offer reports to prove the truth of the matter asserted in certain expert opinions regarding causation and damages. Plaintiff says there are two grounds for exclusion. First, he asserts that Defendants intend to introduce "previously completed expert reports at trial". [ECF No. 62, PageID.707]. Plaintiff correctly points out that introducing expert reports would constitute inadmissible hearsay under FRE 801. Secondly, Plaintiff argues that Defendants' experts may not testify regarding information not included in the expert reports previously produced. As explained below, the Court will grant plaintiff's motion on both grounds, with a caveat.

Relevant evidence that is not inadmissible under FRE 403 may nevertheless be inadmissible if it is hearsay. Hearsay is a statement that the "declarant does not make while testifying at the current trial or hearing and a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay evidence is generally not admissible. Fed. R. Evid. 802. However, there are exceptions to this rule; FRE 803 lists twenty-three exceptions that allow hearsay statements to be admitted as evidence. FRE 804 adds more exceptions, triggered when the declarant is unavailable. *See* Fed. R. Evid. 804. The Sixth Circuit has ruled that expert reports constitute hearsay and are therefore not admissible unless they satisfy a hearsay exception. See *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d.

20

721, 728-729 (6th Cir. 1994) (holding that the Federal Rules of Evidence permit the admission of expert testimony but not of opinions expressed in documents prepared out of court). *Otte v. Greyhound Lines, Inc.*, 2018 WL 2995818 (E.D. Mich. 2018).

Neither party contests the reports' relevancy under FRE 401 and both parties agree that the reports are inadmissible hearsay under FRE 801. Defendants do not argue that the expert reports fall under any of the exceptions listed in FRE 803 and have not indicated that any of the respective declarants would be unavailable at trial under FRE 804. The expert reports prepared for both Plaintiff and Defendants will be excluded from trial because they are inadmissible hearsay. Thus, Plaintiff's motion in *limine* on this issue is **GRANTED**.

On the second issue, the Court must determine if expert opinions not previously disclosed are admissible pursuant to Fed. R. Civ. P. 26. Rule 26 governs discovery and disclosure of expert reports. Specifically, Rule 26(a)(2)(B) mandates that the initial pretrial expert disclosure consist of a written report signed and prepared by the expert. This report must include a complete statement of all expert opinions, their basis, the facts or data the expert considered, any exhibits that are used to support or summarize the opinions, the expert's qualifications including publications and previous cases the expert has worked on, and a statement disclosing the expert's compensation for their work on a case. *See* Fed. R. Civ. Pro.

26(a)(2)(B)(i-vi). Rule 26 allows for the supplementation of disclosures as well, so long as they are made in a timely manner when a party "learns that in some material respect the disclosure or response is incomplete or incorrect" and the corrective information was not known to the party at the time of the initial disclosure. Fed. R. Civ. Pro 26(e)(1)(A). This extends to expert witnesses, who may supplement information in their report and any information given in their deposition. *See* Fed. R. Civ. Pro. 26(e)(2). If a party fails to make proper disclosure, FRCP 37 allows courts to compel and sanction the noncomplying parties. Under Rule 37(c)(1) a party relying on expert testimony that does not comply with Rule 26 is not permitted to use that information as evidence on a motion, at a hearing, or at trial. *See* Fed. R. Civ. Pro. 37(c)(1). However, such testimony may be admissible if the failure was substantially justified or harmless. *Id*.

On the second issue raised in Plaintiff's MIL—whether Defendants' expert may testify about opinions not previously disclosed—Plaintiff requests that any testimony given by experts at trial being limited to the opinions, facts, data espoused in their Rule 26 reports. Plaintiff argues that the Defendants' experts cannot "propound new theories or opinions" that were not previously included in their reports. [ECF No. 62, PageID. 710]. Plaintiff requests potential exclusion of the expert opinions as a sanction under FRCP 37.

22

In support of his argument, Plaintiff relies on *King v. Ford Motor Co.*, 209 F.3d 886 (6th Cir. 2000). He says *King* insists that the Sixth Circuit has not allowed experts to opine facts, theories, or matters beyond what is contained in their Rule 26 reports, unless there is a substantial justification for the failure to disclose. In *King*, a car crash resulted in severe injuries and death. *Id*. King's estate sued Ford Motor Company for negligence, strict liability, and breach of implied warranties. *Id.* at 890. Plaintiff prevailed at trial. *Id*. The case went before the Sixth Circuit with Ford claiming it was entitled to a new trial because the district court erred when it excluded portions of testimony from two of Ford's expert witnesses. *Id.* at 900. The testimony at issue was not properly disclosed under Rule 26 and was only proffered in an attempt to rebut Plaintiff's expert testimony. *Id.* at 901. The Sixth Circuit upheld the district court's exclusion of the testimony, finding that Ford's reason for failing to disclose the testimony in the Rule 26 report was unconvincing. *Id*. The Court in *King* reasoned that Ford was aware of the Plaintiff's experts ahead of time and their failure to disclose was without substantial justification. *Id*.

*King* is distinguishable because here Defendants are asking to supplement expert disclosures that already exist in compliance with Rule 26(a)(2)(B). Further, Defendants indicate that Orders entered by this Court have now made it necessary to supplement the experts' opinions. [ECF No. 73, PageID. 1084]. Specifically, they

reference the Court's ruling cited *supra* regarding MCL 500.3116's application to this case. (Id.) They claim the rulings require supplementation of the opinions offered by experts David Clark and Gary Nayh.

In congruence with FRCP 26(a)(2)(E) and 26(e)(1)(A), the Court will allow the Defendants' expert to supplement their facts and opinions effected by the court's Orders entered after initial disclosures. Defendant must supplement the expert reports by **August 29, 2023**. If Plaintiff wishes to respond to this supplementation, he must do so no later than **thirty (30) days before trial**. All testimony at trial will be limited to the expert opinions espoused in the reports produced, as supplemented. If Defendants' experts seek to give testimony regarding opinions not included in the supplemented reports, the Court will consider sanctions.

### E. [ECF No. 63] Plaintiff's MIL to Bar Any and All Evidence, Testimony, and or Argument Regarding No fault (PIP) or other Collateral Sources Plaintiff Received

Plaintiff says, "Defendants have expressed an intention to introduce evidence of Plaintiff's receipt of PIP benefits in order to minimize Plaintiff's economic damages." [ECF No. 63, PageID.716]. As such, Plaintiff moves in *limine* to bar evidence and argument regarding No fault (PIP) benefits and other collateral sources Plaintiff received.

24

Defendants say they seek to introduce the PIP benefits not to reduce Plaintiff's potential recovery but because "Plaintiff is only entitled to seek recovery of the amounts paid for his medical care" because that is the amount "incurred" for those services. [ECF No. 75, PageID.1105]. As discussed *supra* at section (III.C), Magistrate Judge Elizabeth Stafford issued an Opinion and Order on September 23, 2022. It held that MCL § 500.3116 applies to this case. But Judge Stafford found that while Michigan law applies, this conclusion does not preclude Plaintiff from seeking economic damages. [ECF No. 51, PageID.610]. The Court concluded that "[p]ermitting defendants to avoid payment of damages to Ilnystky that could be used to reimburse Great West would thus frustrate the aims of [MCL § 500.3116(2)]." (Id. at PageID.612). § 3116(2) permits an insurer to seek reimbursement of expenses "*only if recovery is realized on a tort claim* arising from an accident that occurred outside this state", *inter alia*.[2] The Court also stated that Plaintiff:

> acknowledges that Great West Casualty Company paid personal injury protection (PIP) benefits under a Michigan no-fault insurance policy because of the accident. ECF No. 43, PageID.473-475. But Ilnytskyy seeks to escape the requirement of § 3116(2) that he reimburse Great West *if he recovers* economic damages from defendants. He wants a

---

[2] MCL § 500.3116 provides, in relevant part, that "[a] subtraction from or reimbursement for personal protection insurance benefits paid or payable under this chapter may be made only if recovery is realized on a tort claim arising from an accident that occurred outside this state."

25

double recovery for his economic losses simply because his accident
was out of state, in derogation of Michigan law.

[ECF No. 51, PageID.609] (emphasis added). As Judge Stafford notes, this section

prevents double recovery of economic losses by requiring a plaintiff to reimburse an

insurer only after he realizes a recovery for tort liability arising from an accident that

occured outside Michigan. [Id] [(citing *Allstate Ins. Co. v. Jewell*, 182 Mich. App.

611, 617 (1990))].

Defendants argue that "in order to effectuate the ruling that MCL § 500.3116

applies to this case, the amounts paid for Plaintiff's medical care as PIP benefits

must be presented to the jury." [ECF No. 75, PageID.1105]. The Court disagrees. It

is true that Judge Stafford held that Michigan law applies because the state has an

interest in requiring compliance with MCL§ 500.3116(2). But that holding does not

go so far as to prohibit the jury from reviewing evidence regarding amount charged

to Plaintiff in medical bills. And it does not permit Defendants—as a way of reducing

Plaintiff's potential recovery—to contravene Michigan's collateral source rule by

placing before the jury evidence regarding the amount paid for Plaintiff's economic

damages in PIP benefits.

26

Defendants also write that,

> the manner in which the amount of PIP benefits is presented to the jury may need to be modified so that it is presented as the cost of his medical care rather than the amount paid by his PIP carrier, but the amounts [paid in] PIP benefits represent the limit of what Plaintiff can seek for the services related to those benefits[,] so the figures cannot be excluded as a collateral source.

[Id]. To the contrary, § 500.3116 does not purport to place limits—except for in certain circumstances not relevant here—on tort liability for economic damages or medical bills previously paid, at a discount rate, by an insurer or collateral source. Rather, it requires reimbursement to an insurer *after* a recovery is realized.

The goal of preventing double recovery is accomplished by Michigan's collateral source rule. Defendants attempt to argue that PIP benefits are not a collateral source, or that the collateral source rule does not apply because Defendants intend to introduce the PIP benefits to delineate the limit for how much Plaintiff is permitted to recover. Defendants say "provid[ing] the jury with the amounts paid for [Plaintiff's] medical expenses rather than the amount billed for medical expenses" is "the more efficient way to present Plaintiff's damages [to the jury]" because doing so "eliminates the need for a post-verdict reduction of the discount on the medical bills." [ECF No. 75, PageID.1111]. This argument is clearly an attempt to contravene the collateral source rule.

27

The collateral source rule permits "the presentation of evidence to a trial court *after* the verdict but before judgment to show that a plaintiff's claimed 'expense or loss was paid or is payable, in whole or in part, by a collateral source,' " and requires a trial court to reduce the amount of the judgment by that amount. See MCL § 600.6303 (emphasis added); and *Rock v. Crocker*, 308 Mich. App. 155, 171, 863 N.W.2d 361, 371 (2014) n. 9, aff'd in part, vacated in part on other grounds, 499 Mich. 247 (2016) (citing *Greer v. Advantage Health*, 305 Mich. App. 192, 211 (2014)) (emphasis in original). § 600.6303 states that,

> [i]n a personal injury action in which the plaintiff seeks to recover for the expense of medical care, rehabilitation services, loss of earnings, loss of earning capacity, or other economic loss, evidence to establish that the expense or loss was paid or is payable, in whole or in part, by a collateral source shall be admissible to the court in which the action was brought after a verdict for the plaintiff and before a judgment is entered on the verdict. . . . if the court determines that all or part of the plaintiff's expense or loss has been paid or is payable by a collateral source, the court shall reduce that portion of the judgment which represents damages paid or payable by a collateral source by an amount equal to the sum determined . . . This reduction shall not exceed the amount of the judgment for economic loss or that portion of the verdict which represents damages paid or payable by a collateral source.
>
> As used in this section, "collateral source" means benefits received or receivable from an insurance policy . . .

Under the plain meaning of the statute, collateral sources include benefits receivable from an insurance policy. Michigan courts have repeatedly barred the introduction of PIP benefits to mitigate damages. See *Rock*, 308 Mich. App. at 171

(the court granted plaintiff's motion to exclude from trial any evidence of his no-fault benefits, including the reimbursement of his medical expenses and payment of wage loss benefits); and *Nasser v. Auto Club Ins. Ass'n*., 435 Mich. 33, 58, 457 N.W.2d 637 (1990) ("[c]ollateral source rule bars evidence of other insurance coverage when introduced for purpose of mitigating damages.").

Defendants attempt to distinguish a case Plaintiff's rely on: *Greer v. Advantage Health*, 305 Mich. App. 192 (2014). There, the Michigan Court of Appeals decided a post-trial motion for reduction of damages paid by an insurer prior to the verdict in a medical malpractice action involving the negligent delivery of a baby. *Id*. The court held that

> [t]he payments insurers made to parents' healthcare providers were
> 'collateral sources' that could be used to reduce award to parents, under
> plain meaning of statute governing collateral source benefits, because
> insurers paid . . . the expense of medical care that parents sought in
> malpractice action, for which parents obtained a jury verdict in their
> favor, and the insurance discounts that reduced the amount of the
> medical expenses that parents would otherwise have been responsible
> to pay were benefits received or receivable from an insurance policy
> and, therefore, insurance discounts were also a collateral source.

*Id*. at 211. The court further reasoned that, "treating insurance discounts as a collateral source under § 6303 is consistent with the Legislature's purpose in enacting the statute: precluding a plaintiff from receiving a double recovery for a single loss."

*Greer*, 305 Mich. App. at 212 (citing *Heinz v. Chicago Rd. Inv. Co.*, 216 Mich.App. 289, 301, 549 N.W.2d 47 (1996)).

Defendants cannot credibly argue that PIP benefits are not a collateral source. In fact, their briefing plainly asserts that the jury must hear evidence about the amount Plaintiff obtained in PIP benefits to prevent Plaintiff from obtaining a "windfall" by recovering for medical bills already discharged by an insurer. [ECF No. 75, PageID.1110]. The Court is aware of the possibility of double recovery, but the time to move for reduction in Plaintiff's recovery based on insurance benefits being paid, or to require Plaintiff to reimburse the insurer, so as to comply with MCL § 500.3116(3), is after the verdict and before the judgment, as plainly required by the statute.

Plaintiff's MIL docketed at no. 63 is **GRANTED**.

### F. [ECF No. 70] Defendants' Motion in Limine to Exclude Evidence of Medical Bills in Excess of Amounts Paid

Defendants move in *limine* to exclude evidence of Plaintiff's medical bills in excess of the amounts paid by his insurer. This motion relies on many of the same concerns raised in Defendants' response to Plaintiff's MIL to exclude PIP benefits. [ECF No. 75]. Defendants raise the same issues regarding Plaintiff's potential to obtain a windfall. They argue that Plaintiff "can only seek to recover the amounts paid by Great West for PIP benefits rather than the amounts billed." [ECF No. 70,

30

PageID.1045-46]. Defendants believe that, under Michigan law, Plaintiff can recover no more than the amount paid by the insurance company because "Plaintiff did not incur the differential amount above what was paid and cannot present those sums as part of his damage claim in this matter." [Id. at PageID.1045].

They rely on several Michigan cases. First, in *Bombalski*, the Michigan Court of Appeals ruled on motion for summary disposition pertaining to a question of statutory interpretation. Plaintiff brought a lawsuit against his no-fault insurer for expenses constituting the differential amount between the amount billed by the healthcare providers and the amount paid in insurance benefits. *Bombalski v. Auto Club Ins. Ass'n*, 247 Mich. App. 536, 543 (2001). Interpreting MCL 500.3107—a statute that makes PIP benefits are payable by insurers for "reasonable charges incurred" —the court ruled that the statutory meaning of "incurred" was limited "to those amounts actually paid or that the no-fault insured remains legally obligated to pay." *Id*. As a result, the *Bombalski* panel affirmed the trial court's ruling, which granted the defendant insurer motion summary disposition and dismissed plaintiff's lawsuit. *Id*. at 546. Defendants also cite to other cases involving lawsuits against insurers, rulings on motions for summary disposition, that apply and interpret MCL § 500.3107, or that rely on *Bombalski*. [ECF No. 70, PageID.1046] (citing

31

*Duckworth v Cont'l Nat'l Indem. Co*., 268 Mich App 129, 134 (2005), and *Shanafelt v Allstate Ins. Co*., 217 Mich App 625 (1996)).

None of the authority cited directs the outcome of this motion in *limine*. The issues raised in those cases, and in MCL § 500.3107, pertain to a plaintiff insured's legal entitlement to PIP benefits against an insurer. Indeed, § 500.3107 delineates the expenses an insured may recover from an *insurer* pursuant to a statutory entitlement to PIP benefits. Notably absent from discussion in all the aforementioned authority is any suggestion that they apply to tort liability for damages. Insurers are permitted to pay expenses recoverable under § 500.3107 at a discount rate and at a lower price than that which was invoiced by the health care provider. Michigan courts have ruled § 500.3107 does not create, for the insured, a legal entitlement against an insurer to the amount of expenses in medical bills left over when an insurer pays the bill at a discounted rate but the payout nonetheless releases the insured from any legal obligation to pay the rest of the medical bill. But because Plaintiff does not bring a claim for PIP benefits against an insurer and § 500.3107 does place limits on tort liability for damages, that statute does not apply. It is true that, as discussed *supra* at section (III. C), MCL § 500.3135(3) limits tort liability for damages under the no-fault act based on expenses payable in PIP benefits under § 500.3107, but the parties agree that MCL § 500.3135(3) does not apply.

32

Defendants also rely on the same arguments to assert that the evidence of Plaintiff's medical bills is excess of the benefits paid is irrelevant and inadmissible under FRE 402 and 403, since it is not an expense he "incurred" under the no fault act. The evidence is clearly relevant to establish the extent of Plaintiffs' damages, and any potential unfair prejudice or "double recovery" is mitigated by operation of the collateral source rule, which will permit the Court to require that Plaintiff use his potential recovery to reimburse the insurer in an amount equal to the amount paid for medical expenses by the insurer.

Defendants' motion ECF No. 70 is **DENIED**.

### G. [ECF No. 64] Plaintiff MIL Confirming that Certain Testimony of Defense Expert David Clark is Barred from Trial

Plaintiff moves *in limine* to exclude testimony from defense expert David Clark relating to "(1) Mr. Pambo's operation of the hi-lo forklift or his fault based on his actions[,] and (2) any fault of Plaintiff based on Plaintiff's purported actions." ECF No. 64, PageID.735. Specifically, Plaintiff seeks confirmation that, pursuant to the September 12, 2022 Opinion and Order, Dr. Clark's "testimony is limited to his area of expertise, safety in this industrial setting, *i.e.*, the loading dock." *Id.* at PageID.732. Defendants characterize Plaintiff's motion as an "untimely motion

33

seeking reconsideration of the Court's prior ruling" and assert that it must be denied. ECF No. 76, PageID.1119.

On September 12, 2022, Judge Paul D. Borman issued an opinion and order granting in part and denying in part Plaintiff's prior motion *in limine* to exclude testimony from Dr. Clark. *See* ECF No. 50. The relevant portions of that opinion are included below.

> The Court finds that, taken together, while Dr. Clark's education, academic training, professional experience, and knowledge, have left him sufficiently versed in the areas of human factors and industrial safety to create a sufficient foundation for his opinion/testimony in an industrial setting, his background does not establish expertise as to Mr. Pambo's operation of the heavily loaded, backward zooming Hilo forklift – the central focus of this case. The focus is on what happened after Mr. Pambo's aborted initial unsuccessful attempt to travel backwards up the ramp – to wit, his decision to get a running start and then "gunning" the Hi-lo, going backwards up the ramp that caused the unsecured heavy machinery to fall onto Plaintiff, crushing him.

> Dr. Clark's opinion goes beyond Defendants' request that he apply his expertise to the industrial setting, and proceeds further to shift the blame to Plaintiff for his necessary attending to the loading-unloading-reloading of his flatbed lowboy deck trailer that contains no supporting side walls. The Court finds that Dr. Clark's conclusion that totally blames the victim of Mr. Pambo's reckless operation of the Hi-lo is not reliable.

ECF No. 50, PageID.597–98.

34

The Court finds that the part of Dr. Clark's proffered opinion testimony with regard to the industrial setting of the dock in this case is sufficiently relevant and likely reliable to be admissible under Rule 702 and Daubert, but not as to his proposed testimony regarding Mr. Pambo's operation of the Hi-lo and its impact on the victim, Mr. Ilnytskyy.

Dr. Clark states that he "was asked to look at the facts surrounding [the March 19, 2018] forklift accident and to opine relative to the actions of the parties involved." (ECF No. 42-3, Deposition of David Clark, Ph.D., P.E., at p. 14, PageID.440.)

. . .

As set forth in Dr. Clark's expert report, his interpretations of the facts from Defendants' perspective include many conclusions that go beyond the industrial setting, in particular, his complete absolution of Mr. Pambo's conduct that resulted in the unsecured machinery crushing the Plaintiff[.]

. . .

Defendants allege in their Response brief that jurors are unlikely to know the safety considerations that pertain to the loading and unloading of a truck such as the one Plaintiff was driving, in an industrial setting such as Defendants' warehouse, and that Dr. Clark's specialized knowledge will assist the jurors in deciding the liability issues in this case. Dr. Clark's having been previously "in the vicinity" of moving forklifts will not assist the jury in understanding the relevant central issues in this case.

ECF No. 50, PageID.600–02.

Based on the foregoing, it is clear that Judge Borman found that Dr. Clark's opinion testimony regarding Plaintiff's comparative fault in the incident, like his testimony concerning Mr. Pambo's fault, goes beyond Dr. Clark's expertise

concerning human factors and industrial safety.  Judge Borman's findings are law of the case and thus dictate the result here.  *See Hayden v. Rhode Island*, 13 F. App'x 301, 302 (6th Cir. 2001) ("Under the law of the case doctrine, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation.").

Accordingly, Plaintiff's Motion *in Limine* Confirming That Certain Testimony of Defense Expert David Clark Is Barred from Trial is **GRANTED**.  Dr. Clark is still permitted, however, to testify regarding the industrial setting and safety in the industrial setting—*i.e.*, a loading dock in an industrial building such as Defendants' warehouse—as long as such testimony does not focus on Plaintiff's actions during the incident.

### H. [ECF No. 65] Plaintiff's MIL to Bar Any Reference, Argument, or Evidence of Plaintiff's Driving Record, Including Red Express daily driving logs from March 17, 2018, and March 18, 2018

Plaintiff moves in *limine* bar "any evidence of or reference to Mr. Ilnytskyy's driving record prior to or after the accident in question, including driving logs from March 17th and 18th [, 2018]." [ECF No. 65, PageID.746]. He says the evidence is inadmissible under FRE 402, 403, and 404(b).

36

Defendants does not object to the request to exclude his driving record or the log from March 17th but submits that the log sheet from March 18, 2018, is relevant. [ECF No. 78, PageID.1146]. They state,

> Specifically, the log sheet [from March 18, 2018] demonstrates that Plaintiff drove for 11 hours the day prior to the incident (Exhibit A, Driver's Daily Log for March 17[sic], 2018). [3] This evidence relates to how alert or attentive Plaintiff was at the time of the accident, which is relevant to the decisions he made about being on the trailer in the course of the unloading process and his attention at the time.

The Court agrees with Defendants; the evidence is relevant for the stated purpose. Plaintiff raises concerns about unfair prejudice that could result from the jury viewing the driving log as character evidence. Under Rule 404(b), evidence of a person's character trait is not admissible to prove that on a particular occasion the person acted in accordance with that character trait. Plaintiff's March 18, 2018 driving log does not demonstrate a character trait, and Defendants do not offer them to prove that Plaintiff acted in accordance with one. It is true that, on the day of the incident, Plaintiff was allegedly injured when an employee of Defendants negligently dropped a load off his forklift onto Plaintiff and there has been little evidence showing he Plaintiff a role in causing this incident. But evidence showing

---

[3] The Court notes that it appears, based on the date listed on the exhibit attached, that Defendants intended to reference the driving log from March 18, 2018. See [ECF No. 78-1, PageID.1153].

that Plaintiff was not alert on the day of the incident would have a tendency to suggest that he may have been comparatively negligent. Such an inference, if made by the jury, would not be impermissible or unfairly prejudicial because his alertness could have impacted his decision regarding whether to be on the trailer or not. Further, the jury could only make such a finding if it first found that Plaintiff owed a duty to himself, that he breached that duty, and caused his own damages by being less than alert.

Of course, Plaintiff is free to rebut this evidence in an appropriate manner. The evidence has great probative value. On the other hand, any prejudice the jury could draw based on seeing the amount of hours Plaintiff drove the day before the incident can be mitigated by rebutting the evidence and showing, for example, how long Plaintiff slept after completing his drive but before going to the warehouse on March 19, 2018.

The Court finds that the probative value of the driving log is not substantially outweighed by the danger of unfair prejudice. FRE 403. Thus, it is not inadmissible under FRE 403. Further, the Court finds that the driving log is not impermissible character evidence and thus not excludable under FRE 404(b). Plaintiff's motion is **GRANTED** with respect to the March 17, 2018 driving log and **DENIED** with

respect to the March 18, 2018 driving log. Further, no driving records pertaining to discipline or previous accidents may be placed before the jury.

## I.   [ECF No. 66] Plaintiff's MIL for Judicial Notice of Mortality Tables

Plaintiff moves in limine for the Court "to acknowledge mortality tables as self-authenticating or, alternatively, to take judicial notice of the same, as it pertains to Plaintiff's life expectancy for purposes of his future damages." ECF No. 66, PageID.750. Specifically, Plaintiff seeks to rely on Elizabeth Arias, Ph.D. & Arias E, Xu JQ, United States Life Tables, 2020, National Vital Statistics Report 71(1) (August 8, 2022), which is issued by the United States Centers for Disease Control ("CDC"). Id. at PageID.755. Defendants did not file a response in opposition to Plaintiff's motion in limine within the time allotted by the Local Rules. See E.D. Mich. LR 7.1(e). They have since indicated that they do not oppose the relief requested.

The Court finds that, as a publication issued by the CDC, United States Life Tables, 2020 is self-authenticating under Federal Rule of Evidence 902(5). Likewise, given the lack of opposition and the facts in the mortality tables "can be accurately and readily determined" and are "from [a] source[] whose accuracy cannot reasonably be questioned," the Court will take judicial notice of United States Life Tables, 2020 pursuant to Federal Rule of Evidence 201. Accordingly, Plaintiff's

Motion in Limine for This Court to Acknowledge Mortality Tables as Self-Authenticating or, Alternatively, to Take Judicial Notice of Same is **GRANTED**.

      **J.**  **[ECF No. 67] Plaintiff's MIL to preclude testimony or argument suggesting Mateus Pambo was not acting in the scope of his employment.**

This motion is **GRANTED**, as it is uncontested.

## I.    CONCLUSION

The Court's disposition as to all MILs is stated above supra at section (I. (1)-(10)). For the reasons stated above, the Court incorporates these holdings into its conclusion by reference.

**IT IS SO ORDERED**.

Dated:      August 1, 2023

                            s/Gershwin A. Drain
                            HON. GERSHWIN A. DRAIN
                            United States District Court Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on August 1, 2023, by electronic and/or ordinary mail.

/s/ Teresa McGovern
Deputy Clerk

40