UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YAROSLAV ILNYTSKYY,

Plaintiff,

v.

Case No.:19-cv-12268
Hon. Gershwin A. Drain

EQUIPNET, INC.,

Defendants.

_____/

**OPINION AND ORDER SUSTAINING IN PART AND
OVERRULING IN PART DEFENDANTS' OBJECTIONS TO
CLERK'S TAXABLE COSTS [#99] GRANTING DEFENDANTS'
MOTION TO AMEND JUDGMENT TO REMOVE COLLATERAL
SOURCE REDUCTIONS TO PLAINTIFF'S MEDICAL EXPENSES
[#100], GRANTING IN PART PLAINTIFF'S MOTION TO AMEND
JUDGMENT TO INCLUDE TAXABLE COSTS AND PRE- AND
POST-JUDGMENT INTEREST [#98], AND DENYING MOTION
TO INTERVENE [#109]**

## I.    INTRODUCTION

This action was tried before a jury from November 2, 2023

through November 8, 2023.  The jury reached a verdict in Plaintiff

Yaroslav Ilnytskyy's favor in the amount of $4,505,831.41.  Presently

before the Court are the Defendants' Objections to the Clerk's Taxable

Costs, filed on December 13, 2023, Plaintiff's Motion to Amend

Judgment to Include Taxable Costs and Pre- and Post-Judgment Interest filed on December 11, 2023, Defendants' Motion to Amend Judgment to Remove Collateral Source Reductions to Plaintiff's Medical Expenses, filed on December 13, 2023, and Great West Casualty Company's (Great West) Motion to Intervene, filed on February 13, 2024.

These matters are fully briefed. Upon review of the parties' submissions, the Court concludes oral argument will not aid in the disposition of these matters. Accordingly, the Court will resolve the post-trial motions and Defendant's Objections on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, Defendants' Objections are sustained in part and overruled in part, Plaintiff's Motion to Amend is granted in part, Defendants' Motion to Amend is granted and Great West's Motion to Intervene is denied.

## II.   BACKGROUND

The events giving rise to this claim occurred on March 19, 2018 when Plaintiff traveled to Defendants' property in Brockton, Massachusetts to pick up a load of machinery and transport it to a facility in New Jersey. After the load was secured, Defendants'

2

employee, Mateus Pambo, realized he mistakenly put the wrong load on the trailer. Plaintiff began unstrapping the wrong load so it could be properly removed. While removing straps from the third load, Mr. Pambo shouted, "Look Out!" Before Mr. Ilnytskyy could react, he was struck by the industrial mixer that had fallen off the forklift's forks. The jury awarded Plaintiff a verdict, which included $505,831.41 for past medical expenses, household services and attendant care and $4,000,000 for past non-economic damages.

## III.   LAW & ANALYSIS

### A. Defendants' Objections to Clerk's Taxable Costs

After the jury returned its verdict, Plaintiff filed a Request for Bill of Costs pursuant to Fed.R.Civ.P. 54(d)(1) and in accordance with 28 U.S.C § 1920 in the amount of $9,372.01.  On December 6, 2023, the Court Clerk reduced the taxable costs to $8,652.54.  Defendants object to two costs: (1) fees for a first attempt at serving Defendant's former employee, Mr. Pambo and, (2)  fees for a videographer to play video depositions at trial, as well as parking fees for the videographer.

Rule 54(d)(1) states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—

should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).

Federal Rule 54 "creates a presumption in favor of awarding costs" other than attorney's fees. *White & White, Inc. v. American Hospital Supply Corp.*, 786 F.2d 728 (6th Cir. 1986). This presumption is limited to those costs specified in 28 U.S.C. § 1920. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441 (1987).

> Title 28 U.S.C. § 1920 states in relevant part that:
>
> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Additionally, the Eastern District of Michigan has a Bill of Costs Handbook to assist in determining which costs are properly taxable.

Upon the filing of a timely bill of cost, the opposing party has the burden of showing that the costs requested fall outside the scope of 28 U.S.C. § 1920 or are otherwise unreasonable. *LeBron v. Royal*

4

*Caribbean Cruises, Ltd.*, No. 1:16-cv-24687-KMW, 2021 U.S. Dist. LEXIS 120449 (S.D. Fla. Jun. 28, 2021); *see also* 10 C. Wright, A. Miller, and M. Kane, *Federal Practice & Procedure*: *Civil* 3d § 2679 (1998).

Defendants seek to limit Plaintiff's costs for service of a subpoena on Mr. Pambo because one attempt at service was made before the second attempt, which was successful. Thus, Defendants maintain only the successful attempt at service of process is reimbursable.

Plaintiff responds that it had to use two different process servers in order to effectuate service. At the time litigation commenced, Mr. Pambo was no longer employed by Defendants. Plaintiff asserts that Defendants were aware of Mr. Pambo's last known address, phone number, and could have arranged for Mr. Pambo's discovery deposition as they did for his trial deposition. However, Defendants would not participate to coordinate Mr. Pambo's deposition, therefore Plaintiff had trouble finding and serving him. Plaintiff further asserts that Mr. Pambo's discovery deposition was used extensively during the course of the trial.

Here, these circumstances warrant costs for the separate service attempts. Indeed, other courts have found "that the circumstances may warrant recovery of costs for multiple service attempts." *Garcia v. Anauel Catering Corp.*, No. 17-22460, 2018 U.S. Dist. LEXIS 198674 (S.D. Fla. Nov. 19, 2018) (collecting cases). Defendant's objection to the service fees associated with Mr. Pambo is overruled.

The second category of costs that Defendant objects to concerns the award of fees and expenses billed by a video technician to attend trial and playback video depositions. The invoice from Luzod and Trial Services lists the following:

> 1. a charge of $545.00, plus $20 parking for November 3 with a parenthetical handwritten noted referencing Pambo;
> 2. a charge of $645.00, plus $20 parking for November 6 with a parenthetical handwritten note referencing Sadowski and Dyer; and
> 3. a charge of $545.00, plus $20 parking for November 7 with a parenthetical handwritten note referencing Fellows.

The charge description is listed as either "Technician on location at Federal Court" or "Technician attendance at Federal Court House." The descriptions make it clear that the fee is for the attendance and playback of videos and the parking expense

incurred by the technician rather than the cost of the deposition videos themselves.

The Court cannot find any authority supporting Plaintiff's position that costs for a video technician to play video depositions at trial are recoverable. Neither § 1920, nor any case law supports "the taxation of costs for equipment rental or fees charged by a videographer for playback of video depositions at trial." *Morrison v. Reichhold Chems.*, 97 F.3d 460, 465-66 (11th Cir. 1996). None of the cases cited by Plaintiff support the award of costs for videographer fees for playing video depositions at trial. *See Houston v. Am. Sales & Mgmt. Org., LLC*, No. 1:10-cv-10330, 2012 U.S. Dist. LEXIS 24696 (E.D. Mich. Feb. 27, 2012) (allowing taxable costs for editing video depositions to be played at trial); Meredith v. Schriener Transport, 814 F. Supp. 1004 (D. Kan. 1993) (allowing taxation of a videotape transcript); *BDT Prods. v. Lexmark Int'l, Inc.*, 405 F.3d 415, 419-20 (6th Cir. 2005) (videotape deposition costs are taxable). None of the case authority supports awarding costs incurred for using a videographer technician during trial.

7

Defendant's objection to the costs for the videographer's fees is sustained.  Therefore $1,795.00 will be deducted from the taxable costs for a total costs award of $6,857.54.  Defendants' objections are sustained in part and overruled in part.

## B.  Defendants' Motion to Amend Judgment to Remove Collateral Source Reductions to Plaintiff's Medical Expenses

In their Motion to Amend Judgment, Defendants seek to reduce the judgment to reflect the amount actually paid by Plaintiff's PIP carrier, Great West, because Great West resolved Plaintiff's medical bills for an amount less than the amount billed.  Defendants maintain the judgment should be reduced by $75,266.09.  Defendants raised this issue in a motion *in limine*, however, the Court determined that the time to move for a reduction in Plaintiff's recovery is after the verdict.

PIP benefits are provided for under MICH. COMP. LAWS § 500.3107, which provides that PIP benefits are payable for "allowable expenses consisting of reasonable charges incurred for reasonably necessary products, services, and accommodations for an injured person's care, recovery, or rehabilitation."  Turning to the collateral source statute, subsection 1 states that "in a personal injury action in

which the plaintiff seeks to recover for the expense of medical care …
evidence to establish that the expense or loss was paid or is payable, in
whole or in part, by a collateral source shall be admissible to the court"
after a verdict for the plaintiff. Subsection 1 continues to state that if
such damages are paid by a collateral source "the court shall reduce
that portion of the judgment which represents damages paid or payable
by a collateral source…."

Subsection 3 provides that the plaintiff must provide notice of the
verdict via registered mail to all entities entitled by contract to a lien
against the proceeds of the recovery within 10 days of the verdict and
the lien holder has 20 days to respond to exercise the lien. This
subsection has no application to this case because there is no dispute
that Plaintiff is obligated to pay Great West the amount it paid for
medical bills pursuant to MICH. COMP. LAWS § 500.3116. In addition,
Plaintiff has provided no documentation to reflect it complied with the
requirements of subsection 3 related to providing notice to Great West
and Great West exercising a lien. Even if such notice exists, it does not
change the analysis in this case where the obligation to reimburse
Great West arises by statute.

Subsection 4 defines "collateral source" in part as "benefits received or receivable from an insurance policy." It further states that "collateral sources does not include benefits paid or payable by a person, partnership, association, corporation, or other legal entity entitled by contract to a lien against the proceeds of a recovery by a plaintiff in a civil action for damages if the contractual lien has been exercised pursuant to subsection (3). Again, this case does not involve a contractual lien but a statutory reimbursement. As a result, "benefits received or receivable from an insurance policy" constitute a collateral source in this case and, pursuant to subsection (1), the court shall reduce that portion of the judgment which represents damages paid or payable by a collateral source.

In *Greer v. Advantage Health,* the court held that both the amount paid for medical bills and the discount from the amount billed qualify as a collateral source that is to be removed from a judgment. 205 Mich. App. 192 (2014). The *Greer* court stated its conclusion as follows:

> We conclude that the two insurers in this case, Aetna and Priority Health, or the payments they made to plaintiffs' healthcare providers are "collateral sources" within the plain meaning of § 6303(1) because both insurers "paid . . . in whole or in part" "the expense of medical care" that plaintiffs sought in a personal injury action and for which plaintiffs

obtained a jury verdict in their favor. Furthermore, the insurance discounts that reduced the amount of the medical expenses that plaintiffs would otherwise have been responsible to pay must also plainly be "benefits received or receivable from an insurance policy" and, therefore, a "collateral source" within the meaning of the first sentence of MCL 600.6303(4).

*Id.* at 210. The *Greer* court further stated: "Additionally, treating insurance discounts as a collateral source under § 6303 is consistent with the Legislature's purpose in enacting the statute: precluding a plaintiff from receiving a double recovery for a single loss." *Id.* at 211. The reason the insurance discounts in *Greer* were not found to be a collateral source was based on the language of subsection (4), which excludes from the definition of collateral source an executed contractual lien that has been exercised pursuant to subsection (3). The court summarized its ruling:

In sum, we affirm the trial court's ruling regarding collateral source payments under MCL 600.6303. Although we find that an insurance discount is a "collateral source" by which plaintiffs' medical expenses were "paid or payable" and that such a discount is a benefit "received or receivable from an insurance policy," the plain terms of the exclusion from the statutory collateral source rule of § 6303(4) when a contractual lien is exercised is not limited to the amount of the lien; it applies to all benefits that were paid or payable by a "legal entity entitled by contract to a lien."

*Greer* 212-213.  Defendants here have presented evidence that the amount of the discount on Plaintiff's medical bills is a collateral source under its definition in MICH. COMP. LAWS § 600.6303. The discount amount is not excluded from being a collateral source because there is no lien that has been exercised under MICH. COMP. LAWS § 600.6303(3), as required by subsection (4). Because the exclusion discussed in *Greer* does not apply to this case where medical payments are being reimbursed pursuant to MICH. COMP. LAWS § 600.3116 rather than a validly executed lien under MICH. COMP. LAWS § 600.6303(3), the amount of the discount, $75,266.09, remains a collateral source that reduces the judgment by that amount.  Defendants' Motion to Amend will be granted and Plaintiff's economic damages award will be reduced to $430,565.32.

### C.  Plaintiff's Motion to Amend Judgment to Include Taxable Costs and Pre-and Post-Judgment Interest

Plaintiff requests that the Court amend the judgment to include the award of taxable costs, and to award pre-judgment interest and post-judgment interest.  Defendants do not oppose amendment of the judgment to include taxable costs, as well as

pre- and post-judgment interest.  However, Defendants oppose

Plaintiff's requested amounts based on its contention that

adjustments to the jury's verdict are necessary prior to making the

interest calculations in this matter.   Here, the Court has already

concluded that taxable costs total 6,857.54.  Therefore, the

judgment will be amended to reflect these taxable costs.

Additionally, the Court has determined that application of the

collateral source rule reduces the amount of the jury's economic

damages award from $505,831.41 to $430,565.32.

As a prevailing party, Plaintiff is entitled to interest on the

jury verdict calculated from the date the Complaint was filed until

satisfaction of the judgment.  MICH. COMP. LAWS § 600.6013.

Under this statute, an award of full interest in mandatory.  *Grow

v. W.A. Thomas Co.*, 236 Mich. App. 696; 601 N.W.2d 426 (1999);

*Everett v. Nikola*, 234 Mich. App. 632, 638-39; 599 N.W.2d 732

(1999) ("The purpose of the statutory provision permitting interest

to accrue . . . from the time the complaint is filed is to compensate

the prevailing party for expenses incurred in bringing the suit and

for any delay in receiving such damages.").   Accordingly, Plaintiff is entitled to pre-judgment interest and an amended judgment.

Plaintiff also seeks post-judgment interest from November 16, 2023 until payment on the amended judgment.  "[F]ederal law controls post-judgment interest," and allows interest on "any money judgment in a civil case recovered in a district court." *Estate of Riddle v. Southern Farm Bureau Life Ins. Co.*, 421 F.3d 400, 409 (2005); 28 U.S.C. § 1961(a).  "Such interest shall be calculated from the date of entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." *Id*.  "Interest shall be computed daily to the date of payment . . . , and shall be compounded annually."  28 U.S.C. § 1961(b). Accordingly, the amended judgment shall include an award of post-judgment interest.  Plaintiff's Motion to Amend the Judgment will be granted in part.

14

**D.  Great West Casualty Company's Motion to Intervene**

Great West seeks to intervene in these proceedings arguing it needs to protect its statutory right to reimbursement, as well as to seek post-trial additur of the awarded economic damages to the extent Plaintiff's counsel did not present the full amount of Great West's PIP benefits paid to Plaintiff to the jury.  Great West also seeks a share of interest to be awarded, as well as seeks to avoid a reduction in economic damages based on the Defendants' Motion to Amend.

Under Rule 24(a), an outsider may intervene as of right:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2).  The criteria that must be satisfied before intervention as of right will be granted are: (1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3)  impairment of the applicant's ability to

protect that interest in the absence of intervention, and (4)

inadequate representation of that interest by parties already

before the court.  *United States v. Tennessee*, 260 F.3d 587, 591-92

(6th Cir. 2001).

### 1. Timeliness

To determine if a request for intervention is timely, the

Court evaluates the following factors:

(1)The point to which the suit has progressed; (2) the purpose
for which intervention is sought; (3)  the length of time
preceding the application during which the proposed
intervenor knew or reasonably should have known of his
interest in the case; (4)  the prejudice to the original parties
due to the proposed intervenor's failure, after he or she knew
or reasonably should have known of his interest in the case,
to apply promptly for intervention; and (5) the existence of
unusual circumstances militating against or in favor of
intervention.

*Id.* at 592.

Here, Great West's motion to intervene is exceedingly untimely.  In

*United States v. Tennessee*, 260 F.3d 587, 592-93 (6th Cir. 2001), the

motion to intervene was made after the judge had approved the initial

settlement, the motion for final approval was pending and all

substantive issues had been resolved.  The court held that these facts

strongly weighed against allowing intervention.  *Id.*  Similarly in this

case, trial has been conducted.  The jury verdict has been entered and

the jury has been dismissed.  While there are minor issues remaining,

none of these issues warrant intervention at this late stage.  Great

West's present motion was filed three months after entry of the

judgment.  The asserted basis for the delay in seeking to intervene is

that Great West did not know of this action until December 21, 2023.

However, Plaintiff's counsel has provided documentation demonstrating

that Great West was aware of the instant litigation as early as January

23, 2019.  Great West was also put on notice of the upcoming trial on

July 10, 2023, four months prior to the start of trial.  Great West did

nothing for four months prior to trial to advise the Plaintiff of what it

was seeking through reimbursement and cannot now come to this Court

three months after trial seeking to re-open claims for economic

damages.

Allowing intervention at this post trial stage would be prejudicial for

both parties.  Great West is seeking to revive a closed case to assert

additional damage claims that were never presented or considered at

trial.  The jury involved in assessing damages has been dismissed.

Defendants and Plaintiff dispute the claimed reimbursable amounts

Great West seeks in support of its present request for intervention. Allowing intervention at this late date would delay post trial and appellate proceedings.

Lastly, there are no unusual circumstances that support intervention. Great West paid PIP benefits and is entitled to be reimbursed for economic damages recovered by Plaintiff at trial pursuant to MICH. COMP. LAWS § 500.3116. Great West was made aware of Plaintiff's claim and the trial four months prior to start of trial. Great West failed to take any action prior to trial to protect its interest in reimbursement and now seeks to improperly inject itself on a claim that has been decided at trial. Great West's failure to act to protect its interests is not an unusual circumstance warranting intervention. There is no basis to support intervention by right in this case. Great West's right to reimbursement for economic damages has been acknowledged and is not in jeopardy if the current motion is denied. No claim for additional damages is proper or timely in this case.

### 2.  Substantial Legal Interest

Great West's asserted legal interest is to protect its statutory right to reimbursement.  Plaintiff has acknowledged the obligation to reimburse economic damages recovered at trial so there is no risk of losing its right to reimbursement. Further, Great West fails to cite any authority demonstrating its entitlement to pre- and post-judgment interest on amounts reimbursed or otherwise paid pursuant to MICH. COMP. LAWS § 500.3116.

Moreover, any subrogation claim fails as untimely under MICH. COMP. LAWS § 500.3145 and the "one-year-back rule." *See* MICH. COMP. LAWS § 500.3116.  The last wage loss payment and the last medical payment occurred more than one year prior to the yet to be filed Intervening Complaint by Great West. Finally, Plaintiff has filed briefing relative to Defendants' Motion to Amend, thus Great West's interests have been protected.

### 3.  Impairment of Great West's Interests Without Intervention

Again, Plaintiff has agreed it will protect Great West's interests with regard to reimbursement of economic damages actually recovered at trial.  Thus, the only interests sought to be protected relate to the

award of additional damages that were not presented at trial and not considered by the jury. The remainder of the claims sought to be asserted by Great West were not presented at trial and are untimely at this point as discussed above. If there is no valid basis to seek amounts beyond what was awarded at trial, then denying intervention does not impair Great West's interests. To the extent Great West has any interest in the jury verdict in this case, it is protected by Plaintiff's agreement to reimburse Great West in accordance with MICH. COMP. LAWS § 500.3116 and there is no valid interest beyond what was already awarded by the jury. Great West has not provided evidence to support an impairment of its rights. This factor also weighs against intervention.

### 4.  Inadequate Representation of Great West's Interests

As set forth above, Great West's interest in reimbursement of recovered economic damages is protected by Plaintiff's acknowledgement of its obligation to reimburse the amount recovered. No other valid interest exists because even if Great West were to assert a claim of subrogation, it would be untimely and fail.

Here, Great West has failed to satisfy any of the factors relevant to determining if intervention by right is appropriate in this case. Plaintiff notified Great West of the upcoming trial months in advance, but Great West did nothing to protect the interests it now asserts. Great West's motion was not filed until three months after the judgment was entered and two months after Great West admits it learned of the jury verdict. To go backward in this litigation is prejudicial to both Plaintiff and Defendant. It is also unnecessary when Plaintiff has acknowledged it will comply with MICH. COMP. LAWS § 500.3116 to reimburse Great West the economic damages awarded at trial and any subrogation claim is untimely.

### 5. Permissive Joinder

Permissive joinder is permitted under Rule 24(b) when a party has a claim or defense that shares with the main action a common question of law of fact. Permissive joinder is not possible here because Plaintiff's claims have already been adjudicated by the jury. To the extent economic damages were awarded, Great West will be reimbursed. The delay in bringing the motion must be considered under Rule 24(b)(3) and Great West was notified of the November trial in this

21

matter back in July 2023.  The delay is prejudicial to Defendants because Great West is now seeking to add additional damage claims never considered by the jury.  In addition, the new claims are improper because they are untimely under MICH. COMP. LAWS § 500.3145.

## IV.   CONCLUSION

Accordingly, for the reasons articulated above, Defendants' Objections [#99] to the Clerk's taxable costs are SUSTAINED IN PART and OVERRULED IN PART.  Taxable costs are awarded in the amount of **$6,857.54**.

Defendants' Motion to Amend Judgment to Remove Collateral Source Reductions [#100] is GRANTED.  Plaintiff's economic damages are reduced to **$430,565.32**.

Plaintiff's Motion to Amend Judgment to Include Taxable Costs and Pre- and Post-Judgment Interest [#98] is GRANTED IN PART. The parties shall submit a proposed Amended Judgment consistent with this opinion and order **no later than May 8, 2024**.

Great West's Motion to Intervene [#109] is DENIED.

SO ORDERED.

Dated:  May 3, 2024                    /s/Gershwin A. Drain
                                        GERSHWIN A. DRAIN
                                        United States District Judge


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 3, 2024, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager